HOLZMAN *v.* GATTIS.

4-4968

Opinion delivered March 7, 1938.

*Fergeson & Madole,* for appellant.

Appellee, *pro se.*

SMITH, J. This case involves the right to occupy and cultivate a sixty-five acre field for the year 1937, which is a part of a three hundred acre farm owned by Walter O'Kane. Appellee, Gattis, cultivated the entire farm, except the sixty-five acres, during 1936. Willard Pendergrass testified that he rented the sixty-five acre field from O'Kane for the years 1935, 1936, and 1937, and sublet the land to appellant Will Holzman for all those years. O'Kane testified that he did not rent the sixty-five acres to any one for 1937 except Gattis, and the latter testified that he had taken possession of the land about the first of the year 1937, and that he began bedding up the land in March of that year.

The conflicting question of fact as to who rented the land from O'Kane for 1937 was submitted to the jury, and there was a verdict in favor of Gattis, and from the judgment thereon is this appeal.

The parties to this litigation are Gattis and Holzman, who each claimed the right of possession under their respective rental contracts. Gattis brought suit against Holzman in unlawful detainer, which was changed by amendment of the complaint to an action of forcible entry, it being alleged in the amended complaint that Holzman had, by force and threats, deprived Gattis of his possession. Neither party lived on the land.

The action of unlawful detainer would not lie, for the reason that the relation of landlord and tenant had never existed between the parties to this litigation. Neither had ever been the tenant of the other.

It is insisted that the demurrer filed against the first complaint should have been sustained, as against the second complaint, for the reason that the allegations of the latter are insufficient to support a suit in forcible entry. We think, however, that its allegations are sufficient for that purpose. Its allegations are as follows: "Plaintiff further states that he entered possession of the above described land and was in possession and occupying the same. On the ........................ day of ..................................., 1937, and was beginning to plow and prepare the land for the purpose of growing a. crop thereon during the year 1937. On the ........................ day of ..................................., 1937, the said defendant, Will Holzman, through his agents and employees entered upon the above described premises forcible and after they had been admonished and asked to stay off the place, continued to forcible retain the place. By force and by threats of violence they took possession of the above described land and are still forcible retaining possession of the same, contrary to the rights of the plaintiff."

It is also insisted that even though the allegations of the complaint are broad enough, there was no sufficient testimony to support them. We think, however, that there was sufficient testimony to carry this issue to the jury.

According to the testimony offered on behalf of Gattis the right of Pendergrass and his tenant Holzman to occupy the land expired with the end of the year 1936, and he (Gattis) had taken and was in possession. Gattis testified as follows: "Q. What did he (Holzman) do? A. He had been down in the bottoms and came up by my place between sundown and dark, and he said 'Buddy, they tell me you went to work on that land up there,' and I said, 'Yes,' and he said, 'You stay out of there,' and I said, 'No, I'm not going to do that, I rented the land for this year,' and he said, 'By God, I want it, and by God you can't have it,' and he said, 'I will be back by there in the morning,' and the next morning he had two teams in there and Lee Gattis (a nephew of appellee) came over to arbitrate, and I told him that I had this

land rented from Walter O'Kane since July or August, but I said I will arbitrate, I told him that I would pick a good citizen and let Mr. Holzman pick a good citizen and let the two of them pick one and that I would abide by whatever they said, and they came out and left the teams hitched and went to see Mr. Holzman and he wouldn't do it, so I didn't work and wasn't going to work it until it was settled. Q. Then you started this lawsuit? A. Yes, sir, because it might cause serious trouble. and I had rented that land."

We think this testimony sufficient to take the question to the jury whether Gattis yielded his possession voluntarily or through fear of personal violence. One cannot obtain possession of property by putting another in fear and be heard to say that he did not obtain his possession by force. Many of our cases are to the effect that force is the gist of this action, and that it must be actual and hostile, but it is not essential that one hold possession until he has been maimed or beaten. He has the right to recover a possession of which he was deprived through a reasonable fear of these consequences.

Section 6034, Pope's Digest, defines the conditions under which an action of forcible entry may be maintained, and so much of it as is applicable to the facts of this case reads as follows: "If any person shall enter into or upon any lands, tenements or other possessions . . . by such words and actions as have a natural tendency to excite fear or apprehension of danger, . . ., or frightening by threats or other circumstances of terror, the party to yield possession, in such cases every person so offending shall be deemed guilty of a forcible entry and detainer within the meaning of this act."

In the case of *Douglas* v. *Lamb,* 157 Ark. 11, 247 S. W. 77, Justice Wood speaking for the court, said: "Actual physical violence upon the person in possession by the one who takes possession is not a prerequisite to the maintenance of the action, but 'if the demonstration of force is such as to create a reasonable apprehension that the party in possession must yield to avoid a breach of the peace, it is sufficient. It is not necessary that the

party be actually put in fear. There need only be such a number of persons or show of force as is calculated to deter the person in possession from undertaking to send them away or retain the possession.' 11 R. C. L., § 23, pp. 1160-1161.''

The language just quoted was employed in a discussion of the question whether there was testimony tending to prove that the defendant in a forcible entry case had taken possession of the land in controversy by force, it being there said: ''The appellees brought this action under § 4837 of Crawford & Moses' Digest (§ 6034, Pope's Digest), and under that section force is the gist of the action. *Miller* v. *Plummer*, 105 Ark. 630, 152 S. W. 288, and cases there cited.''

The case of *Miller* v. *Plummer*, just cited, was a forcible entry suit, and it was there said that ''It has been uniformly held in all the decisions of this court that actual force is the gist of the action under this section (6034, Pope's Digest), and in the absence of it the action can not be maintained. (Citing cases.)''

Here, Gattis has sufficiently alleged that he was deprived of his possession by force as herein defined, and he offered sufficient testimony in support of that allegation to require its submission to the jury. But the instructions of the court did not make the right to recover possession dependent upon the employment of force in taking possession from Gattis. The instructions given required only that it be found that Gattis was entitled to possession before returning a verdict in his favor.

In the case of *Miller* v. *Plummer, supra,* it was said: ''In neither of the actions (forcible entry and unlawful detainer) prescribed by the statute can the title to the land be called in question further than to 'show the right of possession and the extent thereof.' Kirby's Digest, § 3648 (§ 6034, Pope's Digest). One of the forms of action, of which force is the gist, is created to protect the actual possession of the occupant; and the other is to compel restoration of a permissive possession after

the period for which possession is yielded has terminated.''

It was error, therefore, for the court to instruct the jury that Gattis was entitled to recover possession upon the mere showing that he had the legal right thereto. The instructions should have required the further finding that Gattis had been deprived of his possession by the employment of force as that term is herein defined.

For the error indicated the judgment will be reversed, and the cause remanded for a new trial.