ROBBINS *v.* PAGE.

4-9085                                          227 S. W. 2d 145

Opinion delivered February 13, 1950.

Rehearing denied March 20, 1950.

*H. B. Covington* and *E. L. Hollaway,* for appellant.

*Robt. J. White,* for appellee.

ED. F. McFADDIN, Justice.   Appellee, Page, filed this action against appellant, H. E. Robbins,[1] under the Forcible Entry Statute.   (§ 34—1501 *et seq.* Ark. Stats. 1947.)   Upon issue joined, the case was tried to a jury and a verdict returned for Page.   Robbins has appealed; and presents questions which relate to (1) sufficiency of the evidence, and (2) correctness of instructions.

I.   *Sufficiency of the Evidence.*   Page was in possession of certain lands lying east of Big Piney Creek, and for more, than fifteen years had considered the creek as his boundary line.   Robbins purchased lands west of the creek and claimed that his deed called for approximately nineteen acres east of the creek.   When Robbins had a surveyor locate the supposed boundary line east of the creek, Page notified Robbins by registered mail:

"I am advised that you recently made a survey to determine the east line of"  .  .  .   (a 40 acre tract) .  .  .   "and are contemplating erecting a fence along this line.

"This letter is to advise you that I am the owner of all that part of the"  .  .  .   (40 acre tract)  .  .  .

---

[1] Robbins' son was also named as a party but H. E. Robbins is the real defendant and appellant.

"lying east of the middle of Big Piney Creek, and have been the owner and in possession thereof for many years. I cannot permit such a fence, nor can I recognize any claim of title you may make to that property. Will you please in the future refrain from going upon the lands lying east of the Creek for any purposes."

Notwithstanding this letter, Robbins erected a fence along the supposed line being on the lands in Page's possession east of the creek; and at that time Robbins told the witness, Riggs, that he would give Page no trouble if Page gave him no trouble. When Page removed the fence that Robbins had erected, Robbins, armed with a shotgun, went to the place where the fence had been and held a conversation with the witness, McMinn. The latter testified that Robbins said, he had heard in Clarksville about his fence being taken down and he came to see about it, and that Page ". . . ought to have known what he was doing before he took this fence down." A few days after the foregoing conversation with McMinn, Robbins and his son erected another fence along the line claimed by him, and Robbins continued to hold possession of the disputed lands. While these matters were happening, the wire on a cross fence, that Page had on the land, was cut into small bits and the fence destroyed.

Thereupon Page filed this action, claiming that Robbins was guilty of Forcible Entry in erecting the second fence and holding possession thereafter. Page testified:

"A. Well, I heard that Mr. Robbins was going to erect his fence and he said it wasn't going to be torn down any more.

Q. Then what happened?

A. Well, he built another fence up through the field and was seen down there with a gun—I didn't want to have any trouble with the man, so I brought this suit.

.    .    .    .    .

Q. Why didn't you tear down the second fence?

A. I didn't want to have any trouble with the man.

Q. Did you expect trouble if you did?

A. Yes, sir.

. . . . .

Q. Now you say you didn't remove that fence because of your fear of trouble with him?

A. Yes, sir. He had cut my fence down and part of the wire was gone."

Appellant insists that his entry on the land, at the time of the building of the second fence, was "without force"; and that the entry was peaceable and he was entitled to retain possession. But from the evidence, as heretofore detailed, we reach the conclusion that a jury question was made as to the extent of force used by Robbins in making his entry. When a man, armed with a shotgun, enters on lands and makes the remarks that Robbins made, and then proceeds to rebuild his fence and hold possession against the previous possessor, a jury may reasonably find that all such conduct is not that of peace and friendship, but rather of force and aggression.

In *Douglas* v. *Lamb,* 157 Ark. 11, 247 S. W. 77, Mr. Justice Woop, speaking for this Court, discussed the extent of force required to make a case under our statutes:

"Appellant next contends that there was no testimony tending to prove that the appellant took possession of the land in controversy by force. The appellees brought this action under § 4837 of Crawford & Moses' Digest, and under that section force is the gist of the action. *Miller* v. *Plumber,* 105 Ark. 630, 152 S. W. 288, and cases there cited. Actual physical violence upon the person in possession by the one who takes possession is not a prerequisite to the maintenance of the action, but 'if the demonstration of force is such as to create a reasonable apprehension that the party in possession must yield to avoid a breach of the peace, it is sufficient. It is not necessary that the party be actually put in fear. There need only be such a number of persons or show of force as is calculated to deter the person in possession from undertaking to send them away or to retain his possession.' 11 R. C. L., § 23, pp. 1160-

1161. To determine whether or not force was used, the personnel and situation of the parties and the circumstances surrounding them at the time must all be taken into consideration.''

We conclude that the evidence in the case at bar was legally sufficient to take the case to the jury and to support the verdict that was rendered.

II. *Instructions.* Appellant complains of the wording of Instructions 11 and 12, against each of which there was only a general objection. The Court instructed the jury as to the nature of the action, the issues, the burden of proof, the statutory definition of Forcible Entry, the amount of force required, and other appropriate matters. Then, in Instruction 11, the Court told the jury that, in the light of the foregoing instructions, if it found from the predominance of the evidence that

''. . . the plaintiff was in peaceable possession of the lands involved in this action, and that the defendants without legal right, forcibly, as defined by the court, entered upon the lands and took possession of the same and illegally and without legal right continued in the wrongful possession of such lands and refused to deliver the possession of such lands to plaintiff, then if you so find, your verdict should be for the plaintiff for the recovery of the lands in question.''

In Instruction 12, the Court told the jury that if it found

''. . . that the defendants entered into possession of the controverted lands on or about May 1, 1948, peacefully and under a claim of right, and not as a result of a forcible or hostile entry, and that the entry was not hostile and as alleged by the plaintiff, or that the plaintiff at the time of the alleged entry was not in possession of the lands involved, then your verdict should be for the defendants.''

When we consider these two instructions in the light of the entire fourteen that were given, we reach the conclusion that the appellant's point is not well taken. It is clear, from reading the instructions, that the learned Circuit Judge was thoroughly conversant with, and instructed

the jury in the language of, our cases on Forcible Entry, some of which are: *Grammer* v. *Blansett,* 93 Ark. 421, 124 S. W. 1037; *Miller* v. *Plummer,* 105 Ark. 630, 152 S. W. 288; *Douglas* v. *Lamb,* 157 Ark. 11, 247 S. W. 77; *Holzman* v. *Gattis,* 195 Ark. 773, 114 S. W. 2d 3; *Wall* v. *Robling,* 207 Ark. 987, 183 S. W. 2d 605.

We find the instructions in this case to be clear and comprehensive and covering every phase of the case.

Affirmed.